SHIRLEY DELUCA, Respondent, v ATLANTIC MUTUAL INSURANCE COMPANY, Appellant.

Second Department, October 20, 1975

*Crowe, McCoy, Agoglia & Zweibel (Morris Zweibel* and *Robert Fassberg* of counsel), for appellant.

*Milton B. Grossman* for respondent.

SHAPIRO, J. The judgment appealed from granted the plaintiff summary judgment, struck the defendant's answer and, by way of declaratory judgment, directed it "to afford the plaintiff the protection and coverage under the policy of insurance issued to the plaintiff by defendant, and to defend the underlying action commenced by Robert Pagliuca, Kathleen Pagliuca, Michael Pagliuca and Hilde Grenz, as plaintiffs, against Shirley DeLuca, as defendant". We affirm.

### THE ISSUE

Does the complaint in the action by the Pagliucas and Grenz against the plaintiff state a cause of action which brings into operation the defendant's duty under the homeowner's policy it issued to the plaintiff "at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury * * * even if any allegations of the suit are groundless, false or fraudulent"?

### THE FACTS

The defendant issued a homeowner's policy to the plaintiff. The policy includes coverage against "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * to which this insurance applies, caused by an occurrence". The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." It defines "bodily injury" as "bodily injury, sickness or disease, including care, loss of services and death resulting therefrom."

In the suit instituted by the Pagliucas (and Hilde Grenz as Michael Pagliuca's mother) against the plaintiff in this action and against the Nassau County Police Department and certain detectives therein, the complaint alleges that on May 11, 1973 Robert Pagliuca and his son Michael Pagliuca had laid carpets for the insured in her home; that after they installed the carpet and left, she informed the Nassau County Police Department that they had stolen certain jewelry from her home; that the police then took the Pagliucas to the police station, where they were assaulted and accused of stealing the insured's jewelry; that as a result thereof Robert Pagliuca was physically injured and rendered sick and disabled from exacerbation of a pre-existing ulcerative colitis condition and was hospitalized and bedridden for "a long period of time". The complaint also alleges that the jewelry the insured had reported as stolen was not in fact stolen but was later found by her in her home.

While some of the 12 causes of action in the complaint on behalf of Robert Pagliuca, his son, Michael, Robert's wife, Kathleen, and Michael's mother, Hilde Grenz, speak in terms of the insured's accusation being "malicious and false" and of the police assault and battery as having been "instigated" by her "without just cause or provocation", the fourth cause of action on behalf of Robert Pagliuca contains the following allegation:

"37. On or about May 11, 1973 in Nassau County, New York this plaintiff was injured as aforesaid through the negligence of the defendant Shirley DeLuca, who was negligent and careless in failing to adequately ascertain if her personalty was in fact missing from her premises * * * or was in fact stolen by this plaintiff; in negligently complaining to the police defendants of a larceny which in fact was not committed; in negligently causing, suffering and procuring the unlawful arrest, the unlawful detention and imprisonment, the unlawful assault and battery, the unlawful infliction of mental and emotional disturbance and the injuries resulting to this plaintiff therefrom, and in being otherwise negligent and careless in the premises."

The ninth cause of action, on behalf of Michael Pagliuca, contains an identical paragraph charging negligence to the insured in causing Michael's unlawful arrest and detention and the perpetration upon him of assault and battery and the infliction of mental and emotional disturbance. The complaint

also alleges that Robert Pagliuca, in addition to being "severely injured, bruised, battered and wounded * * * was caused to suffer * * * exacerbation of a pre-existing ulcerative colitis condition, and he was hospitalized and bedridden for a long time".

After the insured was served with the summons and complaint in the Pagliuca action, her attorney forwarded them to the defendant's agent, stating in an accompanying letter that since the fourth cause of action alleged negligence on the part of the insured, she was covered by the defendant's homeowner's policy. He requested the insurer's agent to forward the papers to the insurer "so that they may interpose an answer." The insurer responded by disavowing any obligation to defend the action on the insured's behalf on the ground that the complaint demonstrated that the insured's conduct had not caused bodily injury, as that term is defined in the policy, and that the allegations of the complaint "do not come within the purview and intent of the provision of the policy" which defines the word "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." The insurer also cited a provision in the policy which excludes from its coverage damages resulting from "bodily injury or property damage which is either expected or intended from the standpoint of the Insured", claiming that the conduct charged to the insured in the Pagliuca complaint "was clearly intentional".

The insured then commenced this action, seeking a declaration that she is entitled to protection and coverage by the defendant insurer in the Pagliuca action. The insurer's answer denies liability and alleges, as an affirmative defense, that the events set forth in the underlying Pagliuca complaint do not constitute an "occurrence" under the policy and that the complaint alleges no action by the insured which caused bodily injury resulting from an "occurrence", as that term is defined in the policy, and that the insured's conduct as alleged in the Pagliuca complaint was willful, deliberate and intentional.

The insured moved to strike the insurer's answer and for summary judgment. The Special Term directed the insurer to afford the plaintiff protection and coverage under its policy of insurance and to defend the Pagliuca action. In a memorandum decision, the Special Term declared that the insured was

entitled to be defended in the Pagliuca action since the duty to defend includes defense of those actions in which alternative grounds are asserted, some within and some without the policy coverage, adding that the insured might be held liable for negligent infliction of bodily injury, citing *Goldberg v Lumber Mut. Cas. Ins. Co.* (297 NY 148); *Freedman, Inc. v Glens Falls Ins. Co.* (27 NY2d 364); *Prashker v United States Guar. Co.* (1 NY2d 584). The insurer appeals from the ensuing judgment.

### THE LAW

The defendant contends that the insured's action in calling the police when she was unable to find her jewelry after the Pagliucas had laid the carpet and left was not an accident. Assuming, as alleged in the fourth cause of action, that her failure to find the jewelry was due to the negligent nature of her search, her calling the police to report the putative theft by the Pagliucas could well have been a result of that negligence. While it is true that the insured's calling the police to report the theft was clearly purposive and that she must have anticipated, when so doing, that it would result in the detention and questioning of the Pagliucas, what we said in *Mc-Groarty v Great Amer. Ins. Co.* (43 AD2d 368, 373–374, affd 36 NY2d 358) is applicable here: "While there can be no doubt that the activities of the defendant's insured * * * involved clearly purposive continuing conduct, the ultimate effect of which was the damage suffered by the plaintiff's garage, that fact cannot serve to establish that the damage was not caused by accident so as to be outside the coverage of the policies which the defendant issued to its insured."

We went on to say (p 374): "In our case the insured's acts leading to the damage for which the plaintiff sued were clearly intentionally performed in order to make the insured's construction more usable by its tenants and, insofar as those activities may have involved possible trespasses on the plaintiff's premises, they were also willful. But, and this is the important point, the sequel, the collapse of the plaintiff's garage, an effect of those activities, was, to borrow from Judge CARDOZO in *Messersmith v American Fid. Co.* ([232 NY 161], 165) 'unintended and fortuitous' and is therefore an 'accidental' injury (cf. *Baldinger v Consolidated Mut. Ins. Co.,* 15 AD2d 526, affd 11 NY2d 1026; *Wolk v Royal Ind. Co.,* 27 Misc 2d 478; Restatement, Torts, 2d, § 8 A)."

The Court of Appeals, in affirming, said (p 363): "The Appellate Division majority reversed on the law and the facts in a comprehensive opinion with which we generally agree and upon which we would rest our affirmance were it not that we wish to emphasize that the application of the term accident in such contexts as that before us provides a question of fact and not a question of law." That court went on (pp 363–364): "One often contemplates and envisions a sudden or catastrophic event when considering the term accident—an event which is unanticipated and the product of thoughtlessness rather than willfulness. But a broader view must be taken of the term for otherwise how could we classify catastrophic results which are the unintended fruits of willful conduct? Certainly one may intend to run a red light, but not intend that the catastrophic result of collision with another car occur. Calculated risks can result in accidents. Judge CARDOZO framed the situation perfectly in his lucid opinion in *Messersmith v American Fid. Co.* (232 NY 161) in which he advanced similar illustrations and stated: 'Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes' (p 165). * * * In ultimately summarizing his discussion, he added: 'The character of the liability is not to be determined by analyzing the constitutent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole' (p 166). We agree that this 'transaction as a whole' test should be applied by the fact finder when determining whether the term accident is applicable to a given situation. We agree also that it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damage were intentional."

So, in the instant case, the determination of whether the term "accident" is applicable to the insured's negligence in her search for her lost jewelry, before she (without justification as it later turned out) informed the police that the jewelry had disappeared after the Pagliucas had laid the carpet in her house, is a question of fact to be determined in the Pagliucas' action for the personal injuries they allege they suffered as a result of the charges levelled against them by the insured. Until that question is determined, the allegations by the Pagliucas that their injuries resulted from the in-

sured's negligence suffice to state a cause of action for accidental injury.

The defendant also contends that whatever bodily injuries the Pagliucas suffered were either expected or intended by the insured since all but two of the counts in their action charge that she had "instigated" the assault and battery and that, therefore, the injuries resulting therefrom were "either expected or intended from the standpoint of the insured" and fall under a specific exclusion from the coverage of the policy of "bodily injury * * * which is either expected or intended from the standpoint of the Insured." But, and the defendant concedes, if the underlying complaint in the Pagliuca action contains any cause of action upon which the insured would be entitled to coverage, whether the allegations therein are groundless or not, she would be entitled to a defense under the policy. As the court said in *Prashker v United States Guar. Co.* (1 NY2d 584, 592, *supra)*, "The circumstance that some grounds are alleged in the complaints in the negligence actions which would involve the insurance company in liability, is enough to call upon it to defend these actions".

As heretofore noted, the fourth cause of action alleges that the injuries resulting to Robert Pagliuca were caused by the insured's "negligently causing, suffering and procuring" his "unlawful arrest, the unlawful detention and imprisonment, the unlawful assault and battery, the unlawful infliction of mental and emotional disturbance". Those injuries were described elsewhere in the complaint as including "exacerbation of a pre-existing ulcerative colitis condition" which resulted in his being "hospitalized and bedridden for a long time". No matter how remote the possibility that Pagliuca can establish, as he alleges, that the exacerbation of his colitis resulted from his arrest and detention and from the infliction upon him of mental and emotional disturbance, without regard to the claimed police assault and battery, such illness would qualify as a bodily injury flowing from the insured's negligence, for the right to an insurance company defense arises from the possibility of a recovery and not from its probability (see *Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, *supra; Battalla v State of New York,* 10 NY2d 237; *Rosman v Trans World Airlines,* 34 NY2d 385, 400; *Fuller v Preis,* 35 NY2d 425; *Commercial Pipe & Supply Corp. v Allstate Ins. Co.,* 36 AD2d 412, affd 30 NY2d 619). Of course, the burden would rest on the plaintiff, Pagliuca, to establish that his illness

resulted from his arrest and detention and the infliction upon him, as a proximate result thereof, of mental and emotional disturbance, and not from the assault and battery allegedly committed on him by the police, since their alleged improper conduct in that regard was not the proximate result of the charges which the insured levelled against the Pagliucas.

When the plaintiff purchased her policy from the defendant she not only bargained for "liability insurance" but "litigation insurance" as well *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326) for, as the court said in *Freedman, Inc. v Glens Falls Ins. Co.* (27 NY2d 364, 368): "The courts have recognized that the obligation to defend is broader than the duty to pay *(Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, 154). It extends to any action, however groundless, false or fraudulent, in which facts are alleged within the coverage afforded by the policy *(Prashker v United States Guar. Co.,* 1 NY2d 584). This duty includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased." Here such alternative grounds are stated and the judgment appealed from, which *inter alia* directs the defendant "to defend the underlying action commenced by Robert Pagliuca, Kathleen Pagliuca, Michael Pagliuca and Hilde Grenz, as plaintiffs, against Shirley DeLuca, as defendant", should be affirmed,* with $20 costs and disbursements.

HOPKINS, Acting P. J., LATHAM, MARGETT and BRENNAN, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered October 28, 1974, affirmed, with $20 costs and disbursements.

---

* In view of the nature of the case, the trial court might be well advised to submit framed issues to the jury instead of merely asking for a general verdict.