464 So.2d 507 (1985)
ALLSTATE INSURANCE COMPANY
v.
Mrs. John L. MOULTON.
No. 55360.
Supreme Court of Mississippi.
February 20, 1985.
Rehearing Denied May 22, 1985.
*508 Arthur F. Jernigan, Jr., Bacon, Jernigan & Martin, Jackson, for appellant.
William C. Spencer, Holly Springs, for appellee.
Before ROY NOBLE LEE, DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Marshall County wherein the parties sought a declaratory judgment pursuant to Mississippi Rule of Civil Procedure 57. There is no factual dispute in this cause. At issue is whether the appellant, Allstate Insurance Company, is obligated to defend and indemnify the appellee, Mrs. Moulton, in an action against her for malicious prosecution. The circuit court determined that Allstate was so obligated under a comprehensive dwelling policy purchased by Mrs. Moulton from Allstate. For the reasons stated below, we reverse.
On February 24, 1983, Mrs. Moulton swore out a complaint in justice court which stated that Anthony Walls had stolen her dog. Walls was arrested the next day and held in jail for two hours until he posted a $1,000 bond. Walls was brought to trial on March 5, 1983. Mrs. Moulton was the only witness against him and the charges were dismissed. Walls then filed a malicious prosecution action against Mrs. Moulton. Mrs. Moulton is the owner of a comprehensive dwelling policy issued by Allstate. She notified Allstate that in reliance on that insurance contract she expected Allstate to defend her in the malicious prosecution action.
Mrs. Moulton's insurance contract contains the following provisions:
The Company will pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
* * * * * *
"Occurrence" means an accident, including injurious exposure to conditions, which results, during the endorsement period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured;
Is malicious prosecution the type of "occurrence" contemplated by the insurance policy? This Court has not yet passed on that question; however, other courts appear to be in disagreement. In Winkler v. Ohio Casualty Insurance Co., 51 Md. App. 190, 441 A.2d 1129 (1982), the Maryland Court of Special Appeals held that an identical insurance policy provision did not provide coverage to a store owner who was sued for malicious prosecution, slander and false arrest. Winkler was the owner of a jewelry store. He erroneously accused a *509 customer of stealing a diamond and substituting zircon in its place. The customer denied Winkler's accusation and Winkler summoned the police. The customer was arrested and held for several hours in a police station, questioned and strip searched as a result of Winkler's accusations. Ultimately it was determined that the alleged zircon was really a diamond and that the customer had done nothing wrong. The customer then sued Winkler for slander, malicious prosecution and false arrest. The court looked to the terms of the insurance policy which, like the policy in question, stated that it covered bodily or property damage caused by an "occurrence." As in the instant case, that policy defined occurrence as an accident. The court then held:
Maryland follows the rule that, in construing the language of an insurance policy, the words used "are to be given their customary and normal meanings." Harleysville Mutual Casualty Company v. Harris & Brooks, Inc., 248 Md. 148, 151, 235 A.2d 556 (1967). Thus, to determine what is meant by an "accident," we look first to a dictionary as we did in Simkins Industries, Inc. v. Lexington Insurance Company, 42 Md. App. 396, 401 A.2d 181 cert. den. 285 Md. 730 (1979), and as the Court of Appeals did in Harleysville Mutual Casualty Company. We find there (Webster's Twentieth Century Dictionary) that an "accident" is "a happening, an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected."
The key ingredient is not merely a "happening," for that would make every act or event an "accident"; rather, it is the unexpected nature of the event or its aftermath. 7A Appleman, Insurance Law and Practice, § 4492 (Berdal ed. 1979), states:
"An accident is anything that happens or is the result of that which is unanticipated and takes place without the insured's foresight or anticipation... . As used in insurance policies it is simply an undersigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act." (Emphasis supplied.)
With this focus on the expectability of the event or its consequences we can avoid the need to consider appellant's subjective state of mind. There is no express disclaimer in the policy for acts "intentionally" done, and so it would make no difference whether appellant's acts were prompted by malice or negligence, or some other motivating force. The only relevant consideration is whether, according to the Declaration, the chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by appellant without the unexpected intervention of any third person or extrinsic force. Compare Pryseski, supra, where the Court discussed the undefined word "occurrence" in the context of intentional conduct.
The Declaration plainly and unmistakably alleges that the injuries complained of by the Cromwells were the natural consequence of appellant's charging Mrs. Cromwell with theft and causing her to be arrested. The implication is clear that, whether prompted by negligence or malice, (1) appellant's acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within appellant's foresight and anticipation. The Declaration permits no suggestion that it was by chance that appellant accused Mrs. Cromwell of being a thief, or that it was either by lack of design on his part or the unanticipated intervention of any third party or extrinsic force that she was arrested, or that he could have failed to anticipate that, once arrested, she would be subjected to the embarrassment, deprivation of liberty, and other indignities claimed by her. In short, if *510 the events and consequences occurred as alleged in the Declaration, the Cromwells' injuries cannot be said to have been caused by "an accident," or, thusly, by "an occurrence."
441 A.2d at 1132.
We find the logic of the Maryland court compelling. We recognize that other courts have held that the term accident in a policy such as this refers to unintended consequences of the act such as the infliction of emotional distress. See Deluca v. Atlantic Mutual Insurance Co., 49 A.D.2d 153, 373 N.Y.S.2d 630; however, we are not persuaded by such strained interpretations.
Malicious prosecution is an intentional tort and requires proof of the defendant's mental state. Owens v. Kroger Co., 430 So.2d 843 (Miss. 1983). At the heart of the instant controversy is whether this Court will interpret the word "accident" as referring to Mrs. Moulton's actions swearing out a complaint that Anthony Walls had stolen her dog or whether "accident" refers to the consequences of that act. The policy states unequivocably that "occurrence" is to be interpreted "From the standpoint of the insured." Thus by the terms of the policy we are precluded from interpreting "occurrence" or "accident" from the standpoint of the injured party. We are of the opinion that the contract is sufficiently unambiguous for us to hold that the term accident refers to Mrs. Moulton's action and not whatever unintended damages flowed from that act.
Mrs. Moulton obviously intended to swear out the complaint against Anthony Walls. Although she may not have intended for him to suffer humiliation or embarrassment, she certainly intended for him to be arrested. By requiring Allstate to defend and indemnify Mrs. Moulton, this Court would have stretched the meaning of accident beyond the bounds of that normally used in the English language and certainly beyond the bounds of the use intended within the policy.
Based on all of the foregoing, we hereby reverse the declaratory judgment of the Circuit Court of Marshall County and remand this cause to that court in order that a declaratory judgment be entered, and such further proceedings as may be consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.