UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Plaintiff/Counter-Defendant,

v.

T.K. STANLEY, INC.,
Defendant/counter-Plaintiff.

Civ. A. No. E90–0027(L).

United States District Court,
S.D. Mississippi, E.D.

April 23, 1991.

James L. Carroll, Michael O. Gwin, Watkins & Eager, Jackson, Miss., Joe Clay Hamilton, Meridian, Miss., for plaintiff/counter-defendant.

John R. Gunn, Waynesboro, Miss., Thomas D. Bourdeaux, Meridian, Miss., for defendant/counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff United States Fidelity and Guaranty Company (USF & G) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant T.K. Stanley, Inc. (Stanley) has responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

At issue in this case is whether coverage is provided to Stanley under a general comprehensive liability policy issued by USF & G to Stanley, effective January 1, 1984 to January 1, 1987, for damages caused by Stanley's emission of hydrogen sulfide gas from a salt water disposal facility operated by Stanley in Wayne County, Mississippi.

The facts relative to the dispositive issues in this case are largely undisputed. Stanley is a Meridian-based oil company which operates numerous oil and gas wells in Mississippi. Beginning in about 1984, Stanley, in order to dispose of underground salt water from its wells, leased property in Wayne County adjacent to land owned by Sammie and Alton Cason and created a salt water waste disposal site in an abandoned dry hole. To effectuate its disposal, Stanley transported this "waste" water by truck to the disposal site where it pumped the water from the trucks into storage tanks and then pumped the water from the storage tanks into the dry hole for permanent underground storage. The water often contained quantities of hydrogen sulfide gas and in the process of filtering the water before pumping it into the ground, the hydrogen sulfide gas separated from the water. Stanley constructed vents along the sides of the storage tanks for the purpose of letting air in, as well as allowing the accumulated gas to escape.

Beginning in the spring of 1985, the Casons complained to Stanley personnel, as well as the Mississippi Bureau of Pollution Control, about the hydrogen sulfide gas at Stanley's facility. Despite this complaint, Stanley continued to vent its storage tanks in the same manner as it had done previously. In March 1986, the Bureau of Pollution Control advised Stanley that an investigation of a complaint concerning the facility had "verified these pollution odors exist and at times could be very strong.... Since [hydrogen sulfide] is present in the gases released, control of these emissions is necessary." Stanley failed to take any corrective measures and the Casons filed suit against Stanley in the Circuit Court of Wayne County, Mississippi on June 26, 1986 alleging common law nuisance and charging that the emissions from Stanley's facility were destructive to their health and well-being. Stanley continued its operations during the pendency of the suit until January 1989, when it closed the facility.

The Casons' lawsuit was tried in January 1990, resulting in a verdict for the Casons in the amount of $150,000. USF & G, which defended the Casons' action against Stanley under a reservation of rights, brought the present declaratory judgment action pursuant to 28 U.S.C. § 2201 seeking an adjudication that its policy provides no coverage for the claims made by the Casons in the state court action. USF & G is now before the court requesting summary judgment on the ground that the activity by Stanley which provided the basis for the Casons' lawsuit was not an "occurrence" as that term is defined in the policy, and that if an "occurrence," the claim of the Casons is nevertheless excluded from coverage by virtue of a "pollution exclusion" contained in the policy. The court concludes that the Casons' damages did not result from an "occurrence" within the meaning of the policy, and that there is thus no coverage provided by the policy for the subject claims. Consequently, USF & G is entitled to summary judgment.

■ Stanley is insured under the policy only in the event of an "occurrence" which is defined as:

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

USF & G argues that Stanley knew that it was discharging hydrogen sulfide into the atmosphere and that there was thus no accident which was not expected or intended from Stanley's standpoint. Stanley urges, though, that coverage is provided under the policy since it "neither expected nor intended" for any injury or damage to result from its operations. It acknowledges that it was aware that emissions from its facility contained hydrogen sulfide gas but contends that it never intended to emit vapors into the atmosphere in sufficient quantity or strength to harm any normal person and never expected any such harm would result.[1] Thus it asserts that any harm to the Casons was unexpected

1. Stanley, in fact, maintains that the injuries suffered by Mrs. Cason were the result of her

hypersensitivity, and that any normal person would not have been harmed by the emissions.

and unintended.[2] However, as Stanley correctly recognizes in its brief, and as is clear under Mississippi law, the keystone of the occurrence definition is that the *event* giving rise to the claim should be neither expected nor intended from the standpoint of the insured. In *Allstate v. Moulton*, 464 So.2d 507 (Miss.1985), Mrs. Moulton swore out a complaint against one Walls charging that he had stolen her dog. The case against Walls was dismissed, following which he filed suit against Mrs. Moulton for malicious prosecution. Mrs. Moulton sought coverage under a liability insurance policy issued by Allstate which contained a virtually identical definition of occurrence as that included in USF & G's policy. On appeal of the trial court's entry of judgment for Moulton, the Mississippi Supreme Court reversed, stating:

> At the heart of the instant controversy is whether this Court will interpret the word "accident" as referring to Mrs. Moulton's actions in swearing out a complaint that Anthony Walls has stolen her dog or whether "accident" refers to the consequences of that act. The policy stated unequivocally that "occurrence" is to be interpreted "from the standpoint of the insured." Thus by the terms of the policy we are precluded from interpreting "occurrence" or "accident" from the standpoint of the injured party. *We are of the opinion that the contract is sufficiently unambiguous for us to hold that the term accident refers to Mrs. Moulton's actions and not whatever unintended damages flowed from that act.... Although [Mrs. Moulton] may not have intended [Walls] to suffer humiliation or embarrassment, she certainly intended for him to be arrested.*

*Moulton*, 464 So.2d at 510 (emphasis supplied). The court went on to observe that in determining whether there has been an occurrence,

> [t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and

followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force.

*Id.* at 509 (quoting *Winkler v. Ohio Casualty Ins. Co.*, 51 Md.App. 190, 441 A.2d 1129 (1982)). The court recognized that other courts have held that the term "accident" as used in liability policies refers to unintended consequences of the act, rather than the act itself, but was "not persuaded by such strained interpretations." *Id.* at 510.

■ This court has concluded, in reliance on *Moulton*, that the focus of the occurrence definition is on whether the *act* is "expected or intended," and not whether the resulting damage is "expected or intended." In *Gulf Insurance Co. v. Lloyd*, 651 F.Supp. 518 (S.D.Miss.1986), the insured drew a gun in the course of a fight with an assailant. The gun discharged as the two men fell to the floor, killing the assailant. The insurer filed a declaratory judgment action, claiming that the event did not constitute an occurrence under a definition practically identical to that presently under consideration. The court, citing *Moulton*, ruled for the insurer upon concluding that "Lloyd intended to draw his gun.... [T]he killing of [the assailant], although perhaps an unintended result, cannot be characterized as an 'accident' or 'occurrence' within the meaning of the policy." *Lloyd*, 651 F.Supp. at 519.

The policy provision under consideration in *Berry v. McLemore*, 795 F.2d 452 (5th Cir.1986), defined occurrence as "[a]n accident ... which result[s] in bodily injury ... neither expected nor intended from the standpoint of the insured." The court there held that a police officer's act of shooting an arrestee was not an occurrence within the meaning of that definition, since the officer intended to fire his gun:

> It is uncontested that McLemore intended to fire his gun; in other words, *the discharge of the pistol was not an "acci-*

---

**2.** In support of this assertion, Stanley points out that it did not violate any rule, regulation or law governing hydrogen sulfide emissions.

dent" as referred to in the policy's definition of an "occurrence." ... The focus is, therefore, not on the harm caused but upon the act that caused the harm.... As the intent to fire is the only fact significant to the legal determination of whether McLemore's act was intentional, the district court properly granted [the insurer] a directed verdict on the ground that the policy did not extend coverage to the acts in question.

*Berry,* 795 F.2d at 458 (emphasis supplied). The court in *Berry,* citing *Moulton,* explicitly recognized that "the question of intent does not relate to whether the defendant intended to harm the plaintiff but rather to whether the defendant intended to take the action that caused the harm." *Id* at 457 n. 4.[3]

■ In the case at bar, it is clear that Stanley's act of releasing hydrogen sulfide gas into the atmosphere was not an accident, and hence, was not an occurrence within the policy definition. Summary judgment would appear, therefore, to be appropriate. Stanley, however, in an effort to avoid that result, argues that the policy definition of occurrence is rendered ambiguous by another policy provision, a "pollution exclusion," which provides:

This insurance policy does not apply:

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or irritants, contaminants or pollutants into or upon land, the atmosphere or any other water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Though Stanley has not made clear its assertion of ambiguity, as the court perceives its position, Stanley apparently reasons that since the policy on the one hand provides coverage for an accident which the insured neither expects nor intends, including *"continuous or repeated exposure to conditions,"* but on the other hand excludes coverage for the "discharge, dispersal, release or escape" of pollutants unless that event is *"sudden and accidental,"* then the policy at issue is ambiguous and must be interpreted as not excluding emissions which occur over time.

The court recognizes that some courts have found the pollution exclusion at issue ambiguous. *See, e.g., United States Fid. and Guar. Co. v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (Ill.App.1989); *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (Wis.1990); *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.,* 186 N.J.Super. 156, 451 A.2d 990 (N.J.1982). The court is not similarly persuaded.[4] In the court's view, sudden and accidental as used in the language of the pollution exclusion should be accorded its plain and ordinary meaning,

---

**3.** The Fifth Circuit's opinion in *Berry* could be viewed as injecting an element of foreseeability into the occurrence definition as the court stated:

In ... *Moulton,* ... the Supreme Court of Mississippi interpreted a nearly identical policy definition of "occurrence" to mean that an act fell outside the terms of the policy if "whether prompted by negligence or malice, (1) [defendant's] acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within [defendant's] foresight and anticipation."

*Berry,* 795 F.2d at 458. This statement by the Fifth Circuit was *dictum,* as the court's focus was on the intentional nature of the officer's act. Moreover, the Fifth Circuit's quotation in the cited passage was to a Maryland case quoted by the Mississippi Supreme Court in *Moulton.* While the supreme court found the logic of the Maryland opinion generally persuasive on the point that the crux of the occurrence definition is the intentional nature of the act giving rise to the claim, there is no suggestion in *Moulton* that the court adopted any element of foreseeability, and indeed, the court's application of the occurrence definition to the facts contains no mention of foreseeability.

**4.** The court also recognizes that a number of courts have held that the phrase "sudden and accidental" in the pollution exclusion refers to the nature of the damages, rather than the nature of the damage. *See Jackson Township,* 451 A.2d at 992–94. Such an interpretation is clearly at odds with the express language of the exclusion, which states that the exclusion "does not apply if such discharge, dispersal, release or escape is sudden and accidental...."

i.e., without notice and by chance, so as to exclude routine and repeated discharges. *See United States Fid. and Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988); *Great Lakes Container Corp. v. National Union Fire Ins. Co.*, 727 F.2d 30 (1st Cir.1984); *Hartford Accident and Indem. Co. v. United States Fid. and Guar. Co.*, 765 F.Supp. 677 (D.Utah 1991). *But see Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989).

Neither is the court persuaded that the "occurrence" definition renders the pollution exclusion ambiguous, or vice-versa. In rejecting an identical argument, one court aptly observed as follows:

> El Paso's theory evidences a basic misunderstanding of the construction and operation of insurance contracts. The occurrence definition and the pollution exclusion serve distinct purposes. No ambiguity is created merely because an exclusion eliminates coverage from an insuring agreement.... Policies are generally written to first define the scope of the agreement, and then to exclude the specific risks which the insurer does not cover.

> .    .    .    .    .

The Liability Policy should not be viewed as ambiguous merely because the pollution exclusion excludes coverage for certain risks that the occurrence definition potentially includes.

*Hartford v. USF & G*, 765 F.Supp. at 681 (citations omitted). There is, in the court's opinion, simply no ambiguity.

Even if the interplay between the two policy provisions could somehow give rise to an ambiguity in the policy, the court fails to perceive how any such ambiguity would affect the case *sub judice*, since, as the court has already concluded, the "discharge, dispersal, release or escape" of hydrogen sulfide from Stanley's facility was not an accident in any event, as the act of venting the gases was intentional. *See Liberty Mutual Ins. Co. v. Triangle Indus., Inc.*, 765 F.Supp. 881 (N.D.W.Va. 1991) (unnecessary to address insured's contention that pollution exclusion was in-

applicable to unintended or unexpected damage since insured expected and intended that the sludge be deposited in the landfill and pollution exclusion unambiguously eliminated coverage for damage resulting from the intentional discharge of pollutants). The court concludes, therefore, that Stanley's position is without merit.

Based on the foregoing, it is ordered that the motion of plaintiff United States Fidelity and Guaranty Company for summary judgment is granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.