MAXWELL, J.,
for the Court:
¶ 1. This case involves a dispute between an insured, who had been sued, and its insurance company, which the insured in turn sued for denying it a defense. The controlling issue is whether the underlying lawsuit against the insured triggered the insurance company’s duty to defend. Under the policy, the duty to defend only arose if there were allegations of “property damage” proximately caused by an “occurrence,” which the policy clearly defined as an “accident.” Our review of the complaint against the insured shows the plaintiff alleged the damage to her real property was caused by intentional acts — not by “accident.” Thus, under the policy terms, the insurance company had no duty to defend.
¶2. Because it had no duty to defend, we must reverse the $193,684.95 judgment against the insurance company for breach of contract and bad-faith denial of coverage.
Background
I. Underlying Lawsuit
¶ 3. Margaret Broom owned real property in Wayne County, Mississippi. In 1997, she entered into a $100,000 contract with Kent Excavating for Kent to buy dirt for a Mississippi Department of Transportation (MDOT) project. The contract allowed Kent to dig large pits on Broom’s property. Once the dirt was removed, Kent would create ponds by replacing the topsoil, grading the slopes of the pits, and planting grass. Kent would also grade the access roads to the ponds and cover them with gravel.
¶ 4. Kent never completed the Broom contract. Kent also defaulted on its MDOT contract, so Kent’s bonding company stepped in and assumed Kent’s obligations, including the Broom contract. The bonding company hired a contractor, J.B. Talley & Company, who in turn hired Rea’s Country Lane Construction, Inc., to work on the uncompleted contracts. W.C. Pitts, L & J Construction, Inc., and L & J Trucking were then hired as subcontractors. According to Broom, three pits were dug — but not to the specifications in the Kent contract. Nor was Broom ever properly compensated.
¶ 5. In January 2001, Broom sued Kent, Kent’s bonding company, J.B. Talley & Company, Rea’s, L & J Construction, and L & J Trucking. Broom asserted claims of breach of contract, negligence, gross negligence, conversion, equitable relief (i.e., court-ordered remediation of Broom’s property), unjust enrichment, and fraud.
II. Third-Party Complaint
¶ 6. Rea’s liability insurer, Great River Insurance Company,[1] took the position that, under the commercial general liability (CGL) policy, it had no duty to defend and/or indemnify Rea’s against Broom’s claims. So Rea’s in turn filed a third-party complaint against Great River. It is this third-party claim that is the subject of this appeal.
*440 ¶ 7. Rea’s third-party complaint was tried in the Wayne County Chancery Court, without a jury. In his final judgment, Judge Larry Buffington, who had been appointed special chancellor, stated he was “satisfied that [Broom’s] complaint alleged damages that occurred as a result of an ‘occurrence’ pursuant to the policy.” He held Great River had breached its duty to defend and awarded Rea’s $193,684.95. These damages included Rea’s expenses to defend Broom’s lawsuit, Rea’s $60,000 settlement with Broom, and Rea’s attorney’s fees and expenses incurred in suing Great River.
III. Appeal
¶ 8. On appeal, Great River argues Rea’s failed to show Broom’s lawsuit sought “property damages” caused by an “occurrence,” which the CGL policy defines as an “accident.” Without allegations of an accident, Great River argues Rea’s failed to prove its duty to defend was triggered. Alternatively, Great River argues, even if the complaint could be construed to have alleged “property damage” caused by an “occurrence,” certain express policy exclusions applied, meaning there was no coverage.
A Denial of Great River’s Motions
¶ 9. Citing these policy-related defenses, Great River asserts the chancellor erroneously denied three motions: (1) its motion for summary judgment under Mississippi Rule of Civil Procedure 56, (2) its motion for involuntary dismissal under Mississippi Rule of Civil Procedure 41(b), and (3) its motion for a judgment notwithstanding the verdict under Mississippi Rule of Civil Procedure 50(b).
¶ 10. The three motions challenged the sufficiency of Rea’s proof — the difference being the timing of each motion and the evidence the chancellor had to consider. See PACCAR Fin. Corp. v. Howard, 615 So.2d 583, 587 (Miss.1993). A motion for summary judgment is a pretrial motion that requires the trial judge to consider “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits,” in the light most favorable to the nonmovant and determine whether the plaintiff has presented sufficient evidence to create a fact issue on all the elements of the claims the plaintiff seeks to prove at trial. M.R.C.P. 56(c). A motion for involuntary dismissal applies to cases tried without a jury[2] and may be made by the defendant after the plaintiff presents its evidence. M.R.C.P. 41(b). The trial judge, who is also the trier of fact, then considers the evidence fairly and determines whether or not the unrebutted evidence would entitle the plaintiff to a judgment. Buelow v. Glidewell, 757 So.2d 216, 220 (¶ 12) (Miss.2000). And a motion for a judgment notwithstanding the verdict is made post-judgment, after the trier of fact has considered all the evidence — both the plaintiffs and the defendant’s. See M.R.C.P. 50(b). The trial judge considers the evidence “in the light most favorable to the verdict” and determines whether substantial evidence supports the verdict. Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 949 (¶ 25) (Miss.2008) (citation omitted).

B. Motion for a Judgment Notwithstanding the Verdict

¶ 11. On appeal, the motion we consider is Great River’s motion for a judgment notwithstanding the verdict. We find that by challenging the sufficiency of Rea’s evidence at every possible stage *441 of the litigation, Great River has certainly-preserved its sufficiency-of-the-evidence argument on appeal. See PACCAR Fin. Corp., 615 So.2d at 587 (citing Clements v. Young, 481 So.2d 263, 268 (Miss.1985)). But by going to trial after the denial of its summary-judgment motion and by offering evidence in defense after the denial of its motion for involuntary dismissal, Great River has “waive[d] the right to assign on appeal error in the failure of the trial judge to grant [these earlier] motion[s].” Clements, 481 So.2d at 268 (explaining distinction between waiver of assigning error to denial of motion versus non-waiver of sufficiency-of-the-evidence argument). So we only consider Great River’s sufficiency argument in the context of its motion for a judgment notwithstanding the verdict, which was denied based on the chancellor’s consideration of all the evidence. Cf. PACCAR Fin. Corp., 615 So.2d at 587 (reviewing sufficiency-of-the-evidence argument in context of the denial of the defendant’s request for peremptory instruction and not the earlier denial of its motion for directed verdict).

C. Cross-Appeal

¶ 12. Rea’s cross-appeals the denial of pre-judgment interest and punitive damages. But we need not address these complaints. Since we find the chancellor erred in denying Great River’s motion for a judgment notwithstanding the verdict, the issues of potentially adding interest and punitive damages to the judgment are moot.
Discussion
¶ 13. Great River’s motion for a judgment notwithstanding the verdict challenged the legal sufficiency of the evidence. See Adcock, 981 So.2d at 948 (¶ 25). We review the denial of this motion de novo. Viewing the evidence in the light most favorable to the verdict, we will affirm “if there is substantial evidence to support the verdict.”[3] Id. Because our review reveals there is no evidence to support the judgment in favor of Rea’s, we find the motion should have been granted, and the judgment must be reversed.
I. Proving Coverage
¶ 14. “The burden of proving coverage rests with the insured.” Architex Ass’n, Inc. v. Scottsdale Ins., 27 So.3d 1148, 1157 (¶ 21) (Miss.2010) (citing S. Life & Health Ins. v. Kemp, 300 So.2d 782, 785 (Miss.1974)). In the specific context of CGL coverage, to prove Great River’s duty to defend was triggered, Rea’s had to show: (1) Broom alleged she suffered “property damage”; (2) Broom alleged the property damage was caused by an “occurrence”; and (3) no valid exclusion applied. See Lafayette Ins. v. Peerboom, 813 F.Supp.2d 823, 826 (S.D.Miss.2011).
¶ 15. This particular proof must be found by looking solely to Broom’s complaint and the CGL policy’s language. Auto. Ins. Co. of Hartford v. Lipscomb, 75 So.3d 557, 559 (¶ 7) (Miss.2011). It is the allegations in the complaint, “and particularly the conduct alleged in the complaint, [that] determine whether an insurer is required to defend an action.” Id.
II. Complaint
¶ 16. Broom’s complaint alleged intentional conduct. In her complaint, she alleged that the pits’ “slopes were not as agreed, the pits were not lined with clay, *442 the topsoil was not stockpiled and placed back afterwards.” Further, “[t]he roads and slopes were not graded and grassed nor was the main road graded and graveled.”
¶ 17. Broom made specific allegations against Rea’s subcontractor, W.C. Pitts. She alleged that W.C. Pitts asked if she wanted “topsoil.” Broom said yes — only to discover after eleven trucks loads had been dumped on her property that what W.C. Pitts was trying to pass off as “topsoil” was really “waste material (i.e., red clay).” Broom told W.C. Pitts to stop. But sixty more truck loads of clay were dumped on her property, in direct contradiction to her wishes.
¶ 18. Broom also alleged that she had “not been compensated as agreed,” that the work had not been completed by the contract’s deadline, and that topsoil had been taken from the property without her consent and without compensating her. Broom did not allege any inadvertent conduct caused further damage to her property-
ill. CGL Policy
¶ 19. Looking at the conduct alleged in Broom’s complaint, together with the policy, we find Great River had no duty to defend.
¶ 20. In section l.A of the CGL policy issued to Rea’s, Great River agreed to “pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies.” Great River also agreed that it had “the right and duty to defend [Rea’s] against any ‘suit’ seeking those damages.” But Great River expressly stated it had “no duty to defend [Rea’s] against any ‘suit’ seeking damages for ‘bodily injury’ and ‘property damage’ to which this insurance does not apply.”
¶ 21. So based on the policy’s language, Great River had the duty to indemnify (reimburse) Rea’s for any amount it became legally obligated to pay to another party because of covered property damage. It also had the broader duty to defend any lawsuit against Rea’s in which there was a potential of covered damages for which Rea’s would become liable. See Titan Indem. Co. v. Pope, 876 So.2d 1096, 1101 (¶ 14) (Miss.Ct.App.2004) (holding “the duty to defend is broader than the insurer’s duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy”).
¶22. But Great River had no duty to defend against alleged conduct that fell outside the policy’s coverage. See Lipscomb, 75 So.3d at 559 (¶ 7). That is because, “[i]n Mississippi, an insurance company’s duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of ... its insurance contract with its insured.” Baker Donelson Bearman & Caldwell, P.C. v. Muirhead, 920 So.2d 440, 450 (¶ 40) (Miss.2006). Because the duty to defend “is a matter of contractual agreement,” the duty “is neither greater nor broader than the duty to comply with its other contractual obligations.” Id.
¶ 23. Based on the language of the contract between Great River and Rea’s, Great River had a duty to defend against Rea’s potential liability for “property damage,” but only if the “‘property damage’ [wa]s caused by an ‘occurrence,” which the policy defined as an “accident.” And here, there were no allegations of an accident.

A. Property Damage

¶ 24. There were allegations of “property damage.” The policy defined “property damage” as “[p]hysical injury to tangible property, including all resulting *443 loss of use of that property.” Great River asserts that Broom did not allege in her complaint that she suffered “property damage” or physical injury to her real property but instead alleged she suffered “economic damages” because the alterations made to her property did not comply with the agreed-upon specifications, a portion of her property was converted, and she was not sufficiently compensated under the contract. We agree with Great River that “[pjurely pecuniary or economic losses are not ‘property damage,’ ” Audubon Ins. v. Stefancik, 98 F.Supp.2d 751, 756 (S.D.Miss.1999). But we disagree that Broom only alleged economic injury. The policy defines “property damage” as “[pjhysical injury to tangible property, including all resulting loss of use of that property.” Broom alleged her property had been physically injured by pits being dug, topsoil being stripped, and mounds of waste dirt being dumped. Thus, we find her complaint included allegations of “property damage.”[4]

B. Occurrence

¶ 25. Under the policy, however, mere allegations of property damage do not trigger the duty to defend. The CGL policy is clear that only property damage caused by an “occurrence” is covered. The policy defines “occurrence” as an “accident.” And Broom’s complaint contains no allegations that her property damage was accidental.
¶ 26. Rea’s argues that, because an “accident” is something that is not expected or intended and because Broom did not expect or intend her property to be left in such a state, the damages she alleged were caused by an “accident.” Rea’s relies on Georgia Casualty Co. v. Alden Mills, 156 Miss. 853, 862, 127 So. 555, 557 (1930), to argue that an “accident” is determined by asking whether the injury was unexpected or unintended from the viewpoint of the injured. But in more recent — and more factually relevant — precedent, the Mississippi Supreme Court has found that the use of the term “accident” in a CGL policy to define “occurrence” is “sufficiently unambiguous for [the court] to hold that the term accident refers to [the insured’s action] and not whatever unintended damages flowed from that act.” Allstate Ins. v. Moulton, 464 So.2d 507, 510 (Miss.1985).
¶ 27. In Moulton, the insured swore in a complaint that a man named Walls stole her dog. After the alleged dog snatcher was acquitted, he sued the insured for malicious prosecution. Id. at 508. The insured claimed she was entitled to a defense by her insurer because the injuries Walls sought damages for — the embarrassment and humiliation of being arrested and tried — were unintended consequences of her actions. Id. at 510. But the supreme court held there was no duty to defend because Walls’s injuries were not caused by an accident. The insured had intentionally sworn a complaint against Walls, and regardless of whether she intended or expected to be sued for doing so, there was no “accident.” Id. Here, like Moulton, the lawsuit by Broom may have been an unintended consequence of the defendants’ collective actions related to the dirt work on Broom’s property. But that *444 does not mean Broom’s perceived damages to her property were accidental.
¶ 28. Further, just because Broom sued Rea’s for negligence — in addition to breach of contract, conversion, unjust enrichment, and fraud — does not mean Broom’s suit is based on damages caused by an “accident.” In United States Fidelity & Guaranty Co. v. Omnibank, 812 So.2d 196, 198 (¶ 2), 200 (¶¶ 10-16) (Miss.2002), the insured, a bank that had financed a ear, was also sued for negligence by the car’s owner, after it “forced-placed” insurance on the car. One of the car owner’s allegations was the that bank “engaged in a course of conduct which constituted a negligent disregard for the right[s] of the [ear owner].” Id. at (¶ 13). Despite the use of the word “negligent,” the supreme court held that there was no allegation of an “occurrence” because the car owner did not allege damages caused by an accident. The bank intended to make a loan to the car owner, intended to require the car owner to have insurance on the car, intended to force-place insurance on the car, and intended the car owner to pay for the insurance premium. Though the bank did not intend to cause the car owner harm, the actions that led to the claim for damages were not accidental. Id. at (¶ 16). The same is true here. Though Broom alleged the defendants breached certain duties that proximately caused her damages, she does not allege the breaches were accidental.
¶ 29. Rea’s tries to distinguish this case from Moulton and Omnibank. Rea’s argues that because it was not its actions that caused any of the alleged damage to Broom’s property — but rather those of the other defendants and subcontractors— there was no intentional action on its part. But the supreme court recently held, in a factually similar case, that “accident” refers to the nature of the act that caused the damages, regardless of whether the insured was the actor. Architex, 27 So.3d at 1161 (¶ 28).
¶ 30. In Architex, the insured was a contractor for a hotel building who had been sued for faulty foundation work performed by its subcontractor and who, in turn, sued its insurer arguing there was a duty to defend under a similarly worded CGL policy. Id. at 1150 (¶¶ 3-6). Like Rea’s, the contractor argued the damage to the building was caused by an “occurrence” or “accident” because the insured had not done anything intentional that caused the building’s foundation to be severely compromised. Id. at 1156 (¶ 19). Though acknowledging a jurisdictional split on the issue of whether faulty workmanship by a subcontractor was or was not an “occurrence” under a CGL policy, our supreme court found no reason why allegations of faulty workmanship should change how Mississippi courts approach the question of “occurrence”:
It appears that part of the confusion between insurers and insureds, and in conflicting opinions of courts, is caused by branding faulty workmanship, defective work, and other similar phrases as “occurrences” or not. Faulty workmanship, defective work, et al., may be accidental, intentional, or neither. A return to basics leads this Court to conclude that the underlying facts will determine whether the complaint of “property damage” (defective or faulty workmanship) was proximately caused by breach of a recognizable duty and whether that breach was accidental or intentional; or, whether the “property damage” was caused by neither. In two of the three aforementioned scenarios, no coverage would exist. Only when “property damage” is proximately caused by an accident (an inadvertent act) does an “occur *445 rence,” as defined by the policy, trigger coverage.
Id. at 1160-61 (¶ 28).
¶ 31. Here, Broom alleged that the various defendants acted intentionally — by digging pits, removing topsoil, dumping clay, disobeying her requests, and failing to plant grass and lay gravel — and that it was these intentional acts or refusals to act that damaged her real property. Nowhere in her complaint does she allege there was an inadvertent act or accident that damaged her property. And without an accident, there was no “occurrence,” and without an occurrence, there was no duty to defend.

C. Applicable Exclusions

¶ 32. Further, Rea’s failed to show coverage based on the applicable policy exclusions. “[E]ven if there has been ‘property damage’ caused by an ‘occurrence,’ coverage is not automatic. It also must be ascertained, under the facts specific to each case, if any other exclusions and/or exceptions to exclusions apply.” Id. at 1161 (¶29). So even if Broom had alleged property damage caused by an occurrence — which she did not — Great River’s duty to defend still would not have been triggered because Broom’s alleged property damage fell within the CGL policy’s “business-risk” exclusions, j(5) and j(6).
¶ 33. “These exclusions, j(5) and j(6) in the CGL policy, are designed to exclude coverage for faulty workmanship or defective work performed by the insured, as that is the business risk that should be borne by the insured and not the insurer.” Jeffrey Jackson, Miss. Ins. Law & Prac. § 16:27 (2012 ed.); see also Lafayette Ins., 813 F.Supp.2d at 829 (holding exclusions j(5) and j(6) “operate together to exclude coverage for an insured’s faulty workmanship, the rationale for the exclusions being that ‘faulty workmanship is not an insurable “fortuitous event,” but a “business risk” to be borne by the insured and not the insurer’ ” (quoting Acadia Ins. v. Peerless Ins., 679 F.Supp.2d 229, 234 (D.Mass.2010))). “[UJnless that shoddy work results in accidental property damages or personal injury to one other than the insured!,][t]he CGL insurer does not intend to indemnify the insured contractor for economic consequences of the insured’s bad work.” Jackson, Miss. Ins. Law & Prac. § 16:27; see also Wilshire Ins. v. RJT Constr., LLC, 581 F.3d 222, 226 (5th Cir.2009) (“The ‘your work’ exclusion prevents a CGL policy from morphing into a performance bond covering an insured’s own work.”).
¶ 34. Here, Broom did not allege the defendant contractors’ and subcontractors’ work led to an accident that caused additional property damage. Instead, her allegations of property damage only concerned the parts of her real property where the defendant contractors and subcontractors had performed work. And she alleged the damage was caused directly by this work. Further, Broom sued for the restoration of her property in the areas where the contractors and subcontractors “incorrectly performed” work that was to be done under the Kent contract.
¶ 35. Exclusion j(5) excludes property damage to “[t]hat particular part of real property on which [Rea’s] or any contractors or subcontractors working directly or indirectly on [Rea’s] behalf are performing operations, if the ‘property damage’ arises out of those operationsf.]” And exclusion j(6) excluded property damage to “[t]hat particular part of [Broom’s] property that must be restored, repaired, or replaced because ‘your work’ ” — i.e., “[w]ork or operations performed ... on [Rea’s] behalf’ — “was incorrectly performed on it.” Because Broom sought compensation for damage done only to those parts of her *446 real property where the defendants were working and sought compensation to restore her property to the condition it would have been in had the dirt work been performed according to the Kent contract, her alleged property damage fell under these business-risk' exclusions. Thus, Rea’s failed to prove no policy exclusions applied, which was another essential element of its duty-to-defend and bad-faith claims that was not supported by substantial evidence.
IV. Conclusion
¶ 36. Because there was no duty to defend, the $193,684.95 judgment — premised on the chancellor’s finding that Rea’s had presented sufficient evidence of Great River’s breach of the contractual duty to defend and bad-faith denial of coverage— cannot stand. We reverse the judgment in favor of Rea’s and render judgment in favor of Great River and the other named defendants.[5]
¶ 37. THE JUDGMENT OF THE WAYNE COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. In addition to Great River, Rea’s also sued several entities related to Great River: W.R. Berkley Corporation, Union Standard Insurance Company, and Union Standard Insurance Group. On appeal, Great River argues that the chancellor left unclear whether the final judgment was. against these other entities as well. Further, it argues it is the only entity that could have breached a duty owed to Rea's and acted in bad faith, as it was the only entity that contracted with Rea’s. We do not have to reach this issue. To the extent the chancellor’s judgment was against these other defendants, we reverse and render judgment in favor of all the named defendants.

. In cases tried before a jury, Rule 50(a) applies, allowing for a motion for "directed ver-diet” at the close of the plaintiffs case-in-chief. M.R.C.P. 50(a).

. " ‘Substantial evidence’ is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different con-elusions.” Adcock, 981 So.2d at 948-49 (¶ 25) (quoting Natchez Elec. & Supply Co. v. Johnson, 968 So.2d 358, 362 (¶ 12) (Miss.2007)).

. Great River also asks us to “explore" the position of other jurisdictions that have held that alleged damage to an insured’s work does not constitute “property damage” as contemplated under CGL policies. But we find such an expedition unnecessary. Instead of tinkering with the unambiguous definition of “property damage,” we think the question whether allegations of damage to an insured's work is covered is better resolved by asking whether the property damage was caused by an "occurrence” and, if so, whether the alleged damage falls within a valid exclusion. See Architex, 27 So.3d at 1161 (¶¶ 28-29).

. See note 1, supra.