Neil R. HARRISON and Julia
A. Harrison Plaintiffs

v.

OHIO CASUALTY INSURANCE COM-
PANY, INC., Great American Insur-
ance Company, and State Automobile
Property & Casualty Insurance Com-
pany. Defendants

No. 398CV377WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 15, 2000.

James W. Nobles, Jr., James W. Nobles, Jr., Attorney, James G. McIntyre, James G. McIntyre, Attorney, Jackson, for Neil R. Harrison, Julia A. Harrison, plaintiffs.

William A. Patterson, Wilkins, Stephens & Tipton, P.A., Jackson, for State Automobile Mutual Insurance Company, State Auto Property and Casualty Insurance Companies, consolidated defendants.

## ORDER GRANTING DEFENDANT AMERICAN NATIONAL FIRE INSURANCE'S MOTION FOR SUMMARY JUDGMENT

WINGATE, District JUDGE.

Before the court is defendant American National Fire Insurance's ("American National") motion for summary judgment under Rule 56(b)[1] of the Federal Rules of

---

1. Rule 56(b), Federal Rules of Civil Procedure, provides:

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

Civil Procedure. After having reviewed the motion, briefs, authorities and other supporting documentation provided by both parties, this court finds the defendant's arguments well taken and grants the motion.

## I. *BACKGROUND*

This litigation comes pursuant to a jury verdict against the plaintiffs, Julia and Neil Harrison, in the Circuit Court of Madison County, Mississippi. The Harrisons were sued by a Dr. Fred McMillan after they had sold him a home they had built and had lived in for a number of years. The home in question, located at Lot 19, Overlook Pointe, Madison, Mississippi, developed severe foundation problems that subsequently led to cracked walls, improper drainage, and other related problems during the time that the Harrison's owned and lived in it. The problems persisted after the sale to McMillan. McMillan filed several state law causes of action against the plaintiffs, including breach of contract, breach of implied warranty, negligence, fraud, and misrepresentation. The Madison County jury returned a verdict for McMillan on all counts, except for any fraud/misrepresentation allegations and awarded damages to McMillan of $290,066.84.

Almost immediately after the rendering of the jury's verdict, plaintiffs brought causes of action against several insurance companies, including defendant American National (a part of the Great American Insurance Companies). Plaintiffs seek coverage for the jury verdict rendered against them under the several policies that the insurance companies afforded to either plaintiffs directly, or to the "Service Air Heating & Air Conditioning," d/b/a Service Air ("Service Air").

Defendant American National issued an excess or umbrella coverage policy, policy no. UMB0–83–29–95–09 to "named in-sured," Service Air Heating & Air Conditioning, Inc., et al., on December 20, 1994. The policy covers any "sums in excess of 'underlying insurance' or the retained limit that the 'insured' becomes legally obligated to pay as damages because of 'injury' caused by an 'occurrence' to which this policy applies." The policy also states, however, that "[i]f there is no 'underlying insurance' obligated to do so, we shall have the right and duty to defend any 'suit' against the 'Insured' seeking damages because of the 'injury,' even if the allegations of the 'suit' are groundless, false or fraudulent."

For the purposes of this case, the pertinent "underlying insurance" to which the American National policy refers is a Commercial General Liability Occurrence (GLC) policy issued by the Ohio Casualty Insurance Company ("Ohio Casualty"). The underlying limit of the Ohio Casualty GLC policy is $1,000,000. This court granted summary judgment against the Harrisons and in favor of Ohio Casualty in an earlier order dated March 31, 2000. This court held that the Ohio Casualty GLC policy did not cover plaintiffs for their negligent construction of McMillan's home since, among other reasons, they were not the named "insured" on the policy. The Ohio Casualty GLC policy explicitly named the Service Air company and not the Harrisons as the insured on the declarations page of that policy.

Defendant American National raises three argument for the denial of coverage to the Harrisons: (1) American National argues that the policy limit of Ohio Casualty's GLC policy is not in any way exceeded by the jury verdict rendered in the Madison County litigation between McMillan and the Harrisons; (2) American National also argues that, as in the Ohio Casualty GLC policy, the Service Air company and not the Harrisons are the named

insured in the excess coverage policy; (3) Finally, American National also contends that the negligent construction of the house by the Harrisons was not an "occurrence" under the definition of such in the excess coverage policy. As such, argues American National, its policy does not cover the Harrisons for their losses and costs in the Madison County litigation. American National contends that none of the material facts is in dispute and asks this court to interpret the policy provisions of the insurance policy in its favor under its motion for summary judgment.

The plaintiffs, in their response to defendant's motion, seemingly do not contest the fact that the Madison County jury verdict does not trigger the excess policy provision stated in Section I(A)(1) of the American National policy. The Harrisons rely, however, on Section I(A)(2) of the policy, which states that "[i]f there is no 'underlying insurance' obligated to do so, [American National] shall have the right and duty to defend any 'suit' against the 'Insured' seeking damages because of the 'injury,' even if the allegations of the 'suit' are groundless, false or fraudulent." Plaintiffs argue that since the Ohio Casualty GLC coverage has been denied by Ohio Casualty (a decision upheld by this court), Section I(A)(2) of the American National policy confers a duty on American National to defend or indemnify the Harrisons for the underlying litigation. Plaintiffs also point out to the court that Section III(C) of the American National policy states:

> The amount stated on the Declarations as the Retained Limit is the amount of the damages you will pay when the "injury" is covered by this policy and not covered by "underlying insurance."

According to the Declaration page of the American National policy, the Retained Limit is $10,000. In summation, plaintiffs contend that American National, under

Section I(A)(2) of the policy establishes a duty by American National to defend and indemnify the plaintiffs, with the plaintiffs merely contributing the retained limit of $10,000.

## II. STANDARDS FOR SUMMARY JUDGMENT

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988).

Summary judgment then is mandated in any case where the non-moving party fails to establish the existence of an element essential to the case and on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the

province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962). However, the facts that are irrelevant or unnecessary to a decision are "nonmaterial" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

## III. *ANALYSIS*

Since neither party contends that the material facts presented to the court are in dispute, this court will proceed to assess whether the American National policy provides coverage for the jury verdict rendered against the Harrisons.

### A. Section I(A) of The American National Excess Insurance Policy Coverage.

Defendant American National asserts in its motion for summary judgment that Section I(A)(1) of the policy does not provide coverage for the Harrisons since the underlying insurance coverage provided by Ohio Casualty has been denied. Even if the underlying GLC coverage was granted by Ohio Casualty, American National asserts that the underlying limit of $1,000,000 will not be exhausted since the Madison County jury verdict was only for $290,066.84. Plaintiffs do not dispute this

position taken by American National, but rather point to Section I(A)(2), stated above, of the policy that provides coverage past the retained limit for "any suit" asserted against the plaintiffs if there is not "underlying insurance."

Defendant American National does not address in its documents the applicability of Section I(A)(2) of the policy to the Harrisons' jury verdict in the Madison County court. As such, a plain reading of the policy provision allows this court to conclude that coverage would be provided to the Harrisons for the jury verdict should their property damage fall into the policy's definition of a coverage-inducing "occurrence" and if they are found to be the "insured" under the policy. Ohio Casualty denied the coverage that would have enacted the excess coverage provision of the policy as "underlying insurance." In the absence of "underlying insurance," the American National policy, under Section I(A)(2), provides the Harrisons a defense against any "suit" should they be found as the "insured" under the policy.

### B. The Plaintiff's Actions Qualify As "Occurrences" Under The Subject Policy.

█ The insurance policy issued by American National to the "Service Air Heating & Air Conditioning" limits coverage to "property damage" that is caused by an "occurrence." The term "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The focus of the "occurrence" definition is that the event giving rise to the claim should be neither expected nor intended from the standpoint of the insured. *See U.S. Fidelity and Guar. Co. v. T.K. Stanley, Inc.*, 764 F.Supp. 81, 83 (S.D.Miss.1991).

American National adopts in its memorandum in support of its motion the arguments made by co-defendant Ohio Casualty in regards to the identical "occurrence" definition found in both insurance policies. Both defendants argue that the plaintiffs' actions do not meet the policy definition of "occurrence" since the plaintiffs were charged under McMillan's complaint with intentional conduct that would not fit in with the "accidental" nature of the "occurrence" definition. Surprisingly, Ohio Casualty misstated in its memorandum in support of its motion that the jury verdict form returned by the Madison County Circuit Court jury found the plaintiffs liable for fraud against McMillan. On the basis of this misstatement, Ohio Casualty went on to argue that the intentional nature of the Harrison's actions do not fit the definition of "accident" and "occurrence" listed in the insurance policy.

The special interrogatory that was submitted to the jury actually found the plaintiffs individually liable as follows:

The Court instructs the jury that you are to answer the following questions based on your review of the evidence presented in the course of the trial and the instructions given to you by the Court:

1. Do you find from a preponderance of the evidence that Julia and Neil Harrison breached the provisions of their contract with Dr. McMillan in which they represented that they were not aware of any foundation or drainage problems on the property and they were not aware of any visible or hidden defects, except those disclosed at the time of the closing? Yes __x__ No ____

2. Do you find from a preponderance of the evidence that Julia and Neil Harrison breached their implied warranty to construct the house in a workmanlike manner suitable for habitation? Yes __x__ No ____

3. Do you find from a preponderance of the evidence that Julia and Neil Harrison were negligent; that is, they failed to use a reasonable degree of care, skill and experience in the construction of the house at 137 Overlook Pointe? Yes __x__ No ____

4. Do you find that Julia and Neil Harrison committed a fraud or misrepresentation in dealings with Fred McMillan? Yes ____ No __x__

The plaintiffs were found liable by the jury of negligence in breaching their contract with McMillan and in breaching an implied warranty of habitability regarding the home. Contrary to the misstatement expressed by defendants, the plaintiffs were not found liable for any type of intentional misrepresentation or fraud.

Accordingly, this court finds that defendant has failed to show that the actions for which the plaintiffs were found liable were contemplated, intended or expected on the part of the plaintiffs. In the absence of proof to the contrary, this court would have to conclude that these actions were accidental in nature and would fit the definition of "occurrence" in the American National policy should this court hold that the plaintiffs are covered as "insureds" under the policy.

**B. Plaintiffs Are Not "Insureds" As Defined In The Policy.**

▇▇ The insurance policy issued by American National defines in pertinent part who is insured under the policy as follows:

Section II  WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

The Policy Declarations page lists under "Named Insured" as:

SERVICE AIR HEATING & AIR CONDITIONING, INC. ET AL

The Policy Declarations page also states that the insured is a "Organization (Other that Partnership or Joint Venture.)" No explicit or implicit reference to the Harrisons is made on the Policy Declaration or throughout the body of the policy itself.

Plaintiffs claim that, as directors, officers and shareholders of Service Air, they are entitled to coverage as "insureds" under the above-referenced definition proved in the policy text and declaration. Plaintiffs fail to prove, however, how their actions that led to the jury verdict against them would qualify as part of their duties as officers or directors of the corporation.

The actions of the plaintiffs that led to the jury's finding of liability on the breach of contract, breach of implied warranty, and negligence counts do not in any way relate to their duties as directors, officers, and/or shareholders of the Service Air company. As stated in plaintiff Julia Harrison's affidavit, the duties of the plaintiffs as officers, directors and employees of Service Air were "to locate, find and create work or projects which would use and incorporate the work, assets and expertise of Service Air." These duties to which plaintiffs admit do not relate to the negligent construction and contractual sale of the home to McMillan or any representation that plaintiffs made to McMillan during the closing of such sale that served as the gravamen of the Madison County litigation.

Plaintiffs attempt to link the (negligent) construction of McMillan's home with their duties to Service Air by providing this court with copies of several checks written by them to Service Air. Plaintiff Julie Harrison mentions these checks in her affidavit, but states that they were provided for "time, labor and materials in the project." The simple payment of labor, time and materials costs to Service Air from the proceeds of the sale of the home to McMillan do not show that the negligent construction of the home was done pursuant to the duties the plaintiffs owed to Service Air as directors, officers or employees. This evidence, absent any further indication, only shows that plaintiffs were paying Service Air the costs of its services provided in installing the air conditioning to what would become McMillan's home.

Defendant American National incorporates the arguments and exhibits made available by co-defendant Ohio Casualty in regards to the named-insured issue. In its supporting documentation, Ohio Casualty provided copies of the contract between plaintiffs and McMillan for the purchase of the home and noted that nowhere on the contract and subsequent transactions is

the name "Service Air" presented. All these transactions were signed and/or initialed by the plaintiffs individually. This evidence further supports the conclusion that the construction and sale of the home were actions taken for the individual benefit of the plaintiffs and not pursuant to their duties to Service Air.

Plaintiffs argue in the alternative that their work in conjunction with the building of the McMillan's home qualifies as a "joint venture" under section II(1)(B) of the American National policy, encompassing them as the "insured." This argument must fail in light of the clear information provided in the policy declarations page. As stated above, the declarations page lists the Service Air Company as an "Organization (Other Than Partnership or Joint Venture)." This definition attributed to Service Air does not allow any assumption that the Harrison's building of McMillan's home was a joint venture between them and Service Air.

As such, this court finds as a matter or law that the Harrisons are not an "insured" under the policy. Since the plaintiffs are not the "insured" as that term is defined under the American National policy, their claims under the policy do not survive the attack waged upon them by the defendant under this motion for summary judgment.

### D. Policy Exclusions and the Plaintiffs' Actions.

Even if this court were to find that the Harrisons qualify as the "insured" under the policy, certain policy exclusions would invalidate the Harrisons' claim for coverage under the insurance. Specifically, Section I(B)(2)(a) and I(B)(2)(d) defeat any attempts by the plaintiffs to procure coverage if they were listed as the "insured" under the American National policy.

Section I(B)(2)(a) of the policy states:

This policy does not apply to "Property Damage" to:

a. "Impaired property" or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its term:

The term "your work" is defined under Section V(N) of the policy as:

"Your work" means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. The providing of or failure to provide warnings or instructions.

The undisputed facts show that the Harrisons built and owned the home in the early 1990's before selling it to McMillan, and that the Madison County jury verdict against them found them liable for their negligence in building the home and for breach of implied warranty on the home's suitability. The Harrisons' actions would thus qualify under the Section I(B)(2)(a) exclusion since their "work"—the building of the home and the giving of a warranty of suitability to McMillan—was defective, deficient, and inadequate according to the verdict. As such, even if the Harrisons were the "insured" according to the American National policy, their negligent "work" on the house would preclude cover-

age for the property damage alleged by McMillan in the Madison County litigation due to the Section I(B)(2)(a) exclusion.

Section I(B)(2)(d) of the American National policy provides another exclusion that would defeat the Harrisons' claims. That section of the policy states:

This policy does not apply to "Property Damage" to:

  d. Property owned by the "insured";

It is undisputed that the Harrisons owned the home they sold to McMillan before they sold it. It is also undisputed that the foundation problems over which McMillan sued the Harrison began to occur while the Harrisons owned the home. As such, a clear reading of the Section I(B)(2)(d) exclusion also defeats the Harrisons' claims of coverage under the American National policy.

### CONCLUSION

For the reasons stated above, this court grants defendant American National's motion for summary judgment.