# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01434-COA

KATRINA JACKSON CHAMP, WRONGFUL          APPELLANT
DEATH BENEFICIARY OF JAMES EARL
BERNARD, III, DECEASED

v.

MISSISSIPPI FARM BUREAU CASUALTY          APPELLEE
INSURANCE COMPANY

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2019 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEFFERY P. REYNOLDS |
| | JOHN F. HAWKINS |
| | PATRICIA E. HERLIHY |
| ATTORNEYS FOR APPELLEE: | SAM STARNES THOMAS |
| | OWEN PATRICK TERRY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 03/02/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     After her son was hit by a vehicle, Katrina Champ filed a lawsuit against the driver, Anna Perrin; Anna's parents, Kevin and Angela Perrin; and Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau"). Farm Bureau filed a motion for summary judgment, which the circuit court granted. Champ appealed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Around 10:00 p.m. on September 17, 2018, eighteen-year-old Anna Perrin was driving

a 2012 Acura TL titled in her parents' names on Kingston Road in Natchez, Mississippi, when her vehicle collided with a pedestrian, James Bernard III. According to Anna, she did not know what had hit the vehicle. She pulled over at The Old Kingston Store to observe the damage. Then she drove home and reported the incident to her father, Kevin Perrin. Anna and Kevin returned to the collision site and found Bernard lying next to the roadway. According to Kevin and Anna, they did not call 911 from the collision site because they did not have cell phone service. Instead, they went to Kevin's mother's house and called 911 from there. Ultimately, Bernard was airlifted to the hospital.[1]

¶3. On November 5, 2018, Bernard's mother, Katrina Champ, filed a complaint against Anna and her parents, Kevin and Angela. At the time, Bernard was "physically and mentally incapable of handling his own affairs . . . ." The complaint alleged negligent operation of a vehicle against Anna (Count I); negligence and negligent entrustment against Kevin and Angela (Count II); and negligence against Anna and Kevin (Count III). As to Count III, the complaint asserted that Anna and Kevin had negligently delayed in rendering aid to Bernard.

¶4. On November 13, 2018, Champ filed an amended complaint, naming Farm Bureau as a defendant. The amended complaint requested a declaratory judgment that Homeowner's Insurance Policy Number HOK19650 provided additional coverage in the amount of $300,000 for the claims asserted in the amended complaint.

¶5. In January 2019, Farm Bureau filed its answer, asserting that the homeowner's insurance policy did not provide coverage to the insureds for the claims in the amended

---

[1] According to the crash report, Anna's intoxilyzer result was 0.000.

complaint. Specifically, Farm Bureau argued that "nothing alleged in the Complaint . . . against any insured of Farm Bureau comes within the insuring agreement . . . as no bodily injury or property damage is . . . the result of an "occurrence" defined by said policy to mean an 'accident' . . . ." Alternatively, Farm Bureau argued that the motor vehicle liability exclusion applied. Later that month, Farm Bureau filed a motion for summary judgment, asking the court to declare as a matter of law that it had no duty to defend or indemnify the Perrins under the policy and that there were no claims against Farm Bureau.

¶6.    In February 2019, Champ filed a response in opposition to Farm Bureau's motion for summary judgment and a cross-motion for summary judgment. Champ asked the court to enter an order declaring that the homeowner's insurance policy provided additional coverage and that Farm Bureau had a duty to defend and indemnify the Perrins. Alternatively, Champ asked the court to find that Farm Bureau had a duty to defend the Perrins and hold the indemnification issue in abeyance.

¶7.    At a hearing, the court found that the claims in the amended complaint were not covered by the homeowner's insurance policy. Specifically, the court found that the motor vehicle liability exclusion applied. Subsequently, the court entered its order and final judgment, granting summary judgment and dismissing the claims with prejudice as to Farm Bureau.

¶8.    After Champ filed a notice of appeal, she filed a suggestion of death and motion for substitution. The circuit court granted the motion, finding that Bernard died on August 24, 2019, and substituted Champ for Bernard. On appeal, Champ asserts that (1) Anna and

Kevin breached their duty to render aid or, in the alternative, assumed the duty but did so negligently; (2) her claim for negligent delay in rendering aid was covered by the terms of the policy; and (3) her claim for negligent delay in rendering aid was not excluded by the policy. Alternatively, Champ claims (4) the policy was ambiguous and should have been construed against Farm Bureau. We combine these issues and address whether the court erred by granting Farm Bureau's motion for summary judgment.

## STANDARD OF REVIEW

¶9. The grant or denial of summary judgment is reviewed de novo. *Wright v. R.M. Smith Investments L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Thrash v. Deutsch, Kerrigan & Stiles LLP*, 183 So. 3d 838, 842 (¶10) (Miss. 2016)). "The moving party bears the burden to show that no genuine issue of material fact exists, and the evidence must be viewed in the light most favorable to the nonmovant." *Id*.

## DISCUSSION

¶10. We must address whether the court erred by granting summary judgment in favor of Farm Bureau as to Count III, negligent delay in rendering aid.[2] Champ concedes that the

---

[2] Mississippi Code Annotated section 63-3-405 (Rev. 2013) provides, in relevant part:

The driver of any vehicle involved in an accident resulting in injury or death of any person or damage to any vehicle which is driven or attended by any person shall . . . render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or

4

remaining claims in the amended complaint were not covered by the homeowner's insurance policy.

¶11. In the section of the homeowner's insurance policy pertaining to coverages for personal liability, Farm Bureau agreed to "[p]ay up to our limit of liability for the damages for which an 'insured' is legally liable" if a claim was made or a suit was brought "for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." Farm Bureau also agreed to "provide a defense." However, it expressly stated that it had "no duty to defend any suit seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶12. Based on the policy's language, Farm Bureau had the duty to indemnify the Perrins for any amount up to the policy's limit that it became legally obligated to pay to another party because of covered bodily injury. It also had the broader duty to defend any lawsuit against the Perrins in which there was a potential of covered damages for which the Perrins would become liable. *See W.R. Berkley Corp. v. Rea's Country Lane Const. Inc.*, 140 So. 3d 437 (¶21) (Miss. Ct. App. 2013).

¶13. But Farm Bureau had no duty to defend against alleged conduct that fell outside the

surgical treatment if it is apparent that such treatment is necessary. . . . No such driver who, in good faith and in the exercise of reasonable care, renders emergency care to any injured person at the scene of an accident or in transporting said injured person to a point where medical assistance can be reasonably expected, shall be liable for any civil damages to said injured person as a result of any acts committed in good faith and in the exercise of reasonable care or omission in good faith and in the exercise of reasonable care by such driver in rendering the emergency care to said injured person.

Miss. Code Ann. § 63-3-405.

policy's coverage. That is because "in Mississippi, an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its insurance contract with its insured." *Id*. at (¶22) (quoting *Baker Donelson Bearman & Caldwell P.C. v. Muirhead*, 920 So. 2d 440, 450 (¶40) (Miss. 2006)).

¶14. Based on the language of the policy, Farm Bureau had a duty to defend against the Perrins' potential liability for "bodily injury" but only if the "bodily injury" was caused by an "occurrence," which the policy defined as an "accident," and no exclusion applied. *See Lafayette Ins. Co. v. Peerboom*, 813 F. Supp. 2d 823, 826 (S.D. Miss. 2011).

¶15. The Perrins' policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the policy defines "occurrence" as an "accident," the policy does not define "accident." However, our supreme court has provided guidance as to the meaning of the term. For example, the supreme court has explained that an "insured's intentional acts do not constitute 'accidents,' and the damages resulting therefrom do not amount to 'occurrences,' even if the insured acts in a negligent manner." *Id.* (quoting *Architex Association Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1159 (¶25) (Miss. 2010)). That is, "even if an insured acts in a negligent manner, that action must still be accidental and unintended to implicate the policy language." *Id*. (quoting *Architex*, 27 So. 3d at 1158 (¶24)).

¶16. The circuit court found that Bernard's injuries arose out of the use of a motor vehicle. We agree. However, even if a bodily injury was caused by an "occurrence," coverage is not automatic. "It also must be ascertained, under the facts specific to each case, if any other

6

exclusions and/or exceptions to exclusions apply." *Berkley*, 140 So. 3d at 445 (¶32) (quoting *Architex*, 27 So. 3d at 1161 (¶29)).

¶17.    The homeowner's insurance policy in this case contains an exclusion for motor vehicle liability. The policy states that "personal liability" does "not apply to any 'motor vehicle liability' if at the time and place of an 'occurrence' the involved 'motor vehicle' is registered for use on public roads or property . . . ." The policy defines "Motor Vehicle Liability" as "[l]iability for 'bodily injury' . . . arising out of the: (1) Ownership of such vehicle or craft by an 'insured'; (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person; (3) Entrustment of such vehicle or craft by an 'insured' to any person; (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an 'insured'; or (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft."

¶18.    Champ acknowledges that liability arising out of the use or operation of a vehicle is excluded from coverage. However, Champ argues that "post-accident claims" are not excluded. According to Champ, Anna and Kevin's delay in rendering aid was unrelated to the use or operation of the vehicle and that the delay proximately caused Bernard's injuries. We disagree. Bernard's injuries would not have occurred but for the use or operation of the motor vehicle. And such use proximately caused Bernard's injuries. The motor vehicle liability exclusion excludes coverage for injuries that would not have occurred but for the use of a motor vehicle, regardless of the theory of liability asserted. *See Titan Indem. Co. v. Estes*, 825 So. 2d 651, 657 (¶22) (Miss. 2002). Therefore, we find that the circuit court did

7

not err by granting Farm Bureau's motion for summary judgment.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE AND SMITH, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., DISSENTING:**

¶20. This appeal is not about the driving Anna was doing when she drove a car into James Bernard one night in Adams County. It is about what happened right after she stopped driving. Because the exclusion to the insurance only covers what happens when she is driving, there is a genuine issue of material fact as to whether it covers her duty to render aid to a victim on the side of the road. As a result, I believe we should reverse the grant of summary judgment.

¶21. The Legislature has crafted a mandatory duty that all drivers must bear—the obligation to give aid and assistance when a car accident occurs. Miss. Code Ann. § 63-3-405 (Rev. 2013). If there is an accident with damage to any vehicle or person, the "driver *shall* render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person." *Id*. (emphasis added). The statute also includes a "samaritan" provision providing immunity to the driver so long as they "in good faith and in the exercise of reasonable care" provide care or transportation. *Id*.

¶22. Seventy years ago, our Supreme Court explained the important public policy behind

8

the statute, which plainly "makes it mandatory for the driver to stop such vehicle at the scene of the accident." *Meadows v. State*, 211 Miss. 557, 562-63, 52 So. 2d 289, 291 (1951). "[O]ne of the main purposes of the statute is to enable the persons injured and the officers investigating the accident to determine who was at fault, and to compel the driver of the car involved in the accident to render humanitarian assistance to the persons injured, whether he was guilty of negligence in the operation of his vehicle at the time of the accident or not." *Id.*[3]

¶23.  Therefore, statutory law and precedent are clear that Anna had the duty to stop and help James.  The Court focuses on the fact that Anna was operating a motor vehicle when she hit James.  That is not in dispute.  In fact, focusing on this point ignores the fact that her duty under State law plainly requires her to *stop* operating her car to give help.  As the *Meadows* Court clearly stated in 1951, the driver must "*stop* such vehicle at the scene of the accident." *Id.* (emphasis added).  Whether that simply means pull over and get out of the car, or actually put the car in park, turn off its engine, unbuckle the seatbelt, open the door, get out, and then "render . . . reasonable assistance," there is no way Anna should be continuing to operate her car.

¶24.  If she is not then operating a car, then the exclusion to the insurance simply does not apply.  An insurance policy "is construed most strongly against the insurer as the drafter of the policy." *Progressive Gulf Ins. Co. v. We Care Day Care Ctr. Inc.*, 953 So. 2d 250, 253

---

[3] The plain language of this law means that only drivers of motor vehicles have this duty.  Non-drivers, such as Anna's father, passengers, or after-the-accident arrivals at the scene do not shoulder the same obligation.

9

(¶11) (Miss. Ct. App. 2006). "Clauses in a policy seeking to limit coverage must be written in clear and unmistakable language and are strictly construed." *Id*. at 254 (¶12) (internal quotation mark omitted) (quoting *Miss. Farm Bureau Co. v. Jones*, 754 So. 2d 1203, 1204 (¶8) (Miss. 2000)).

¶25. Here, there is no doubt that the policy excludes occurrences when they arise from the use of a motor vehicle. However, construing the policy *strictly*, as we are required to do, the limitation in coverage does not apply to the driver's duty to render aid and assistance pursuant to Mississippi law. As statute and precedent tell us, that duty requires the driver to stop and give help. This is simply two different things.

¶26. Nor does the *Titan* case cited by the Court mandate this outcome. The family in that appeal was stretching to argue that a "bodily injury" exclusion would not necessarily include "other categories of damages not classified as bodily injury damages," like "the loss of the companionship and society of [the plaintiff], the present net cash value of [their] life expectancy, and punitive damages." *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 657 (¶21) (Miss. 2002). The Supreme Court rejected such a convoluted interpretation of what "bodily injury" meant under a policy, and held that "when insurance policy language is clear and unambiguous, this Court will not adopt a strained interpretation in order to create nonexistent coverage that the insurer otherwise has not assumed." *Id*. at 658 (¶24). The case certainly did not create a blanket rule that a motor vehicle liability exclusion would cover damages for a duty that only arises after a driver stops operating a motor vehicle.

¶27. Unlike *Titan*, we could rely on a jury, if it finds liability, to use comparative fault to

10

determine if injuries to the victim were from the operation of the motor vehicle or from the driver leaving him on the side of the road while she went and got her parent.

¶28. It is clear that under Mississippi law, the driver had the duty to stop and render aid to the victim of her crash. It is likewise clear that applying the proper interpretation of insurance contracts, the motor vehicle exclusion does not preempt coverage for an alleged breach of that duty. As a result, we should reverse and remand.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**